## MARGARETTA ALEXANDER v. JOHN WUNDERLICH.

APPEAL FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued January 30, 1888—Decided February 13, 1888.

Equity will not decree specific performance of a contract for the exchange of lands, against the party who at the time appointed for performance was ready and willing, and in favor of the other party who was not only in default but never offered to perform according to the terms of his contract, and whose laches rendered performance on his part impossible.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 100 January Term 1887, Sup. Ct.; court below, No. 1 December Term 1884.

On January 7, 1885, John Wunderlich filed a bill in equity against Margaretta Alexander, to enforce the specific performance of a written contract to convey land.

After issue by answer and replication, the cause was referred to *Mr. Montgomery Evans*, as examiner and master, who found from pleadings, testimony and admissions before him the following facts :

On March 11, 1884, Margaretta Alexander, being the owner of a farm of 28 acres and 75 perches in Upper Salford township, and John Wunderlich, being the owner of a farm of 52 acres and 87 perches in Franconia township, agreed to exchange their respective properties. They accordingly executed two separate agreements of sale for their particular farms, both drawn by John J. Corson, a real estate agent and conveyancer of Norristown. Neither agreement refers in any way to the other. Both agreements are of the same date, March 11, 1884; contain covenants for the sale of the respective farms for the same consideration, except that the Wunderlich property is valued at $4,500, including a $2,700 mortgage thereon, and the Alexander property at $1,800, clear of incumbrances ; $250 of the consideration money to be paid upon the execution of the respective agreements, the balance on October 1, 1884, when deeds are to be executed at the office of John J. Corson ; and upon the payment of said sum, i. e. the balance of the purchase money over and above $250, the grantors shall execute proper deeds to the grantees at the expense of the latter, in fee simple, free of incumbrances and right of dower, etc. The grantors covenant to convey at the price fixed, in one contract $1,800, in the other $4,500, " in the manner and at the time," not " all " times as printed in the bill, " herein above provided." Possession was to be given on April 1, 1884. Certain personal property was to go with the land in each case. The contracts are signed by the same parties, with the same persons as witnesses.

The two agreements differ in the description of the premises to be conveyed, of course, and in the penalty for non-compliance, which, in the contract for the sale of the Alexander farm, is " in the penal sum of thirteen hundred dollars ;" in the other, for the sale of the Wunderlich property, it is " in the sum of thirteen hundred dollars as and for damages liquidated

and settled between the parties hereto." In the agreement for the sale of the Wunderlich farm the parties thereto are declared to be John Wunderlich of the one part, and Edward R. Fellows, who is the son-in-law of Mrs. Alexander, of the second part. Margaretta Alexander and not Edward R. Fellows signs the contract as the party of the second part. It was the understanding and intention of all the parties that the deed for the Wunderlich property should be made to Edward R. Fellows. The down money, $250, was paid by an exchange of receipts, no money actually passing.

In pursuance of these agreements Mr. Fellows took possession of the Wunderlich property, with a quantity of hay, straw, and a few other articles of personal property upon the premises, in the latter part of March, 1884. Mrs. Wunderlich obtained possession of the Alexander farm a few days after the agreement was signed and on March 14th, by written agreement, contracted to sell the farm to Sebastian Schultz, who paid $300 in cash on account of the purchase money. The title to Schultz was to be completed by October 1, 1884. Schultz took possession of the premises, with some hay, straw, etc., thereon, left there by Mrs. Alexander according to her agreement.

Mr. Wunderlich, a short time prior to October 1, 1884, sent word, through two different persons, to Mr. Fellows, who acted for and with Mrs. Alexander throughout this whole transaction, to be on hand on that day at Corson's office, as he would be there with an executed deed for the premises he had sold to him. But Wunderlich went to Philadelphia a short time prior to October 1st to obtain the signature of his wife to a deed for the premises he had sold. He did not accomplish his purpose however, until October 24th.

Mrs. Alexander and Edward R. Fellows were in Norristown on the appointed day, with no deed for their property actually prepared, but ready and willing to comply with the agreement for the exchange of deeds had Wunderlich been ready to then comply. Mrs. Alexander made no tender of a deed to Wunderlich, nor did she see him in regard to his failure to comply at the time fixed; but Mr. Fellows, a few days after October 1, 1884, went to Wunderlich's home in Sumneytown, but did not find him as he was in Philadelphia. Then Fellows came to Norristown, and, receiving no information from Wunderlich's

counsel, his own attorney, Mr. Hunsicker, addressed a letter to Wunderlich at Sumneytown, demanding compliance with the contract within one week or suit would be brought. On October 23, 1884, Fellows brought suit to No. 45 December Term 1884, to recover damages for failure to comply with the agreement. On November 8, 1884, a deed, executed by John Wunderlich on September 26, 1884, and by his wife on October 24, 1884, conveying the Wunderlich property to "Edward Fellow" (sic) was tendered the latter, on the premises, but refused. No reason for the refusal was given. On November 15, 1884, the same deed was tendered to Margaretta Alexander and refused.

Mr. Fellows, after harvesting all the crops matured, made sale, and moved from the Wunderlich farm on November 30, 1884, Mrs. Alexander going with him. The key of the house was sent to Wunderlich by express. Fellows left upon the premises a portion of the hay and straw he found there upon taking possession. He paid no interest upon the $2,700 mortgage mentioned in the contract of sale. The property remained unoccupied until March, 1885, when Isaac S. Borneman took possession by consent of Wunderlich's counsel, who gave written notice to Mrs. Alexander and Mr. Fellows on December 17, 1884, that in accepting the keys by express or in taking possession of the Franconia farm, he did not intend in any way to release them from a specific performance of the Upper Salford premises. Borneman, the occupant, has kept an account of all receipts and expenditures of the farm.

It was further found from testimony taken before the final report of the master was filed, on a re-opening of the hearing:

That Sebastian Schultz during the pendency of this suit, to wit, on November 24, 1885, removed from the premises purchased from Wunderlich and had brought suit to No. 88 December Term 1884, to recover the down money he paid, and that the property was again in possession of Wunderlich.

Also, that Isaac S. Borneman, who, at the instance of Wunderlich, took charge of the premises relinquished by Mr. Fellows and Mrs. Alexander, has in his hands $230, as the net proceeds of crops, etc., sold from said premises.

Also, that subsequent to the filing of this bill, to wit: No-

vember 6, 1885, suit was brought by Tobias K. Nice, et al., v. Elizabeth P. Storey and William A. Storey, with notice to John Wunderlich, terre tenant, to foreclose the mortgage upon the farm which Wunderlich agreed to convey to Mrs. Alexander. On January 25, 1886, judgment was obtained by default against defendant and terre tenant, and the property was afterwards levied upon and sold by the sheriff, who acknowledged his deed to the purchaser on March 13, 1886. Neither Margaretta Alexander nor Edward R. Fellows appears as a party to these proceedings.

Upon the foregoing facts found, the master held that a court of equity had jurisdiction under its power for "the affording specific relief when a recovery in damages would be an inadequate remedy:" Act June 16, 1836, P. L. 789; Finley v. Aiken, 1 Gr. 83; Brightly's Eq. J., 188; Bisp. Eq., §§ 362–364; Kauffman's App., 55 Pa. 383; that whether or not specific performance should be decreed in any particular case was discretionary with the court, and proceeded:

Are the facts in the present case such that it would be inequitable to refuse the prayer of the plaintiff for a decree of specific performance?

Both parties had taken possession of the respective properties purchased, through their alienees. Wunderlich had sold to Schultz. Mrs. Alexander had sold to her son-in-law, Fellows, who went into possession and remained there from March to December, harvesting the crops grown during that time, and then, without even paying the interest accruing meanwhile upon the existing incumbrance, moves away, first having brought suit to recover damages from Wunderlich. If this were the whole case, surely a chancellor would be constrained to grant specific performance to plaintiff. But the defendant proved as her defence that she was ready and willing at the time fixed for the completion of the respective titles, to wit: October 1, 1885, to fully comply by executing a deed to plaintiff. This brings up the principal question. Has the plaintiff by his failure to comply with his agreement on the day named, forfeited his rights?

There is no stipulation nor necessary implication in these contracts that time shall be considered as of the essence thereof.

In their absence, time is not ordinarily of the essence of the contract for the sale of lands : D'Arras v. Keyser, 26 Pa. 249 ; Bispham's Eq., § 391.

This was to be an exchange of properties. A conveyance by Wunderlich of his property represented the purchase money for that purchased by him from Mrs. Alexander. He was not ready with this deed on the day mentioned in the contract for its delivery. Can he afterwards tender it and come into a court of equity to compel what would have been ready to his hand on October 1, 1884, had he then been ready with the deed for his property? Yes, if he has shown himself ready, desirous, prompt and eager. No, if he has been guilty of gross laches or inexcusably negligent in performing his contract, or there has been a material change of circumstances affecting the rights and interests of the parties : Tiernan v. Roland, 15 Pa. 438. The facts must answer : Possession is taken, by the two parties, of the exchanged properties. Wunderlich sells the one he receives to Schultz, agreeing to give a deed therefor on the very day he is to receive title from Mrs. Alexander. Some time before October 1st, he sends messengers to Fellows notifying him and his mother-in-law to be ready at the time fixed. On September 26th, he signs and acknowledges a deed for his former property to Edward Fellows. All this shows that he was desirous, prompt and eager, and guilty of no laches. He then goes to Philadelphia to obtain his wife's signature and fails. He does not accomplish it until October 24, 1884. Is his inability to perfect his title excusable? In the case of Townsend v. Lewis, 35 Pa. 125, where specific performance was decreed, the delay was due to the want of the wife's signature at proper time. It is sufficient if the party has a good title at the time of the decree : Langford v. Pitt, 2 P. Wms. 630 ; 3 Lead. Cases in Equity, 445, 79. The delay is only from October 1st to November 8th, the time of tender of the deed. This could not be regarded as gross laches on the part of the old man.

The only question then is, was there any change in the circumstances which made it inequitable that both parties should fulfil their contracts at the time of tender of the deed by Wunderlich. No, for both parties were in possession of the exchanged properties, just as they were on April 1st, before.

Fellows gathered the crops on the late Wunderlich farm and remained thereon until November 30th, when, without having given any notice of his intended removal, he sent the keys of the house, by express, to Wunderlich. It is true that about the middle of October, Fellows' counsel addressed a letter to Wunderlich giving him a week to comply, and on October 23d, Fellows brought suit for damages. As he was then still in possession, the only effect of such a notice would be that he claimed damages, not that he rescinded the contract. The tenor of the letter has not been proved. It would seem doubtful whether any length of default will give a right to determine the contract in the absence of notice and where the presumption of abandonment is repelled by actual possession: 3 Lead. Cases in Equity, 87; Hatton v. Johnson, 83 Pa. 219. The notice must give a reasonable time and be explicit in demand and tender: Wiswall v. McGowan, 1 Hoff. 125, 139; Tiernan v. Roland, 15 Pa. 429. There is no proof of proper notice in this case. Indeed the defendant has never tendered a deed for the late Alexander property to plaintiff, nor has she ever had any deed, either to her or from her, prepared.

The property did not deteriorate up to the time of tender of the deed, nor was there any change of circumstances affecting either of the parties. Mrs. Alexander says that Fellows refused to purchase the property because title was not made early in October. Fellows gives no valid excuse for his change of mind, and Mrs. Alexander can compel him to fulfil his agreement with her, unless she has done or omitted something to her own prejudice. However that may be, her act or omission cannot affect Wunderlich's rights.

It is urged that the deed tendered by Wunderlich was not in proper form, the name of the grantee being written "Edward Fellow" instead of "Edward R. Fellows." But no objection to the form or sufficiency of the deed was made at the time of tender or the defect could have been remedied: Tiernan v. Roland, 15 Pa. 429. It was Mrs. Alexander's duty, under the contract, to have had the deed prepared.

Under the two several and distinct contracts in this case either party could have a decree of specific performance as to either property without reference to the other property. If A. contract to sell one estate to B., and B. contract to sell an-

other estate to A., although entered into by the same instrument, they are several contracts and either A. or B. may compel the other to convey his estate to him, although he himself cannot make a title to the estate which he contracted to sell: 1 Sugden on Vendors, 319*, citing Croom v. Lediard, 2 Myln & K. 251, 293.

As the difficulty existing between Wunderlich and his wife was known to defendants and the matter was talked over before October 1, 1885, and was again the subject of conversation between Fellows and Mr. Swartz and Mr. Weand on that day and afterwards, and the reason for the delay was known and nothing said by the defendants to indicate that the delay was not acquiesced in, and the defendants continued in possession and there was no change in the circumstances, there seems to be no escape to a chancellor from making a decree of specific performance in favor of the plaintiff.

Even where time has been of the essence of the original contract, the result of the authorities is, that a new right may grow out of the entry of the vendee and part payment of the purchase money, or other acts of part performance, which equity will protect and enforce: 3 Lead. Cases in Equity, 85 ; Edgerton v. Peckham, 11 Paige 352; Jones v. Robbins, 29 Me. 351.

Under every view of this case the master is of the opinion that specific performance should be decreed in favor of the plaintiff. He therefore recommends to the court to make a decree that the said defendant, Margaretta Alexander, shall execute and deliver a proper deed of conveyance in fee simple for the premises mentioned in the bill, to said John Wunderlich, upon the payment by him of the sum of two hundred and thirty dollars to her and also upon the delivery by him to her of a proper deed of conveyance in fee simple, executed by himself and wife, for the premises he contracted to convey to her, mentioned in the answer of respondent. And further, that the defendant be restrained from maintaining or prosecuting any action at law against the plaintiff for damages for breach of the contracts mentioned in the bill and answer in this suit, upon the payment or tender by plaintiff of the costs accrued in the case of Fellows v. Wunderlich, 45 December Term, 1884. And further, that each party pay one half of the costs of this suit.

Various exceptions by the defendant were overruled by the master and, being filed with his report, on November 1, 1886, they were dismissed by the court, BOYER, P. J., without opinion, and a final decree entered as recommended. Thereupon the defendant took this appeal, specifying, inter alia, that the court erred:

1. In reforming the two contracts of sale into a contract of exchange.

2. In decreeing performance of a contract different from that alleged in the bill.

4. In entering the decree recommended by the master.

*Mr. Charles Hunsicker* (with him *Mr. Henry Freedley*), for the appellant:

1. These two agreements were several and distinct; were purposely so made; and, while possibly the transaction in effect was an exchange of lands, it was by the act of the parties put in the form of two agreements of sale, independent of each other; differing in parties, in terms, in the lands to be conveyed, and connected only in the time and place of their consummation. The plaintiff filed his bill on the one agreement of sale, without reference to the other. A court of equity will execute only the contracts of the parties. It will not interpolate new contracts and on a bill for the performance of one, execute another and a different one admitted or set up in the answer: Parrish v. Koons, 1 Pars. 79; P. & R. R. Co. v. Lehigh Nav. Co., 36 Pa. 211; Harris v. Knickerbocker, 5 Wend. 649, 655; Croome v. Lediard, 2 Myln. & K. 251; Legal v. Miller, 2 Ves. Sr. 299; Townshend v. Stangroom, 6 Ves. 332; Mortimer v. Orchard, 2 Ves. 244. The bill, therefore, stands for the contract set forth in it, a contract to pay $1,800, and to receive a conveyance of the Upper Salford farm.

2. Written instruments can be varied or reformed upon parol evidence, only where fraud, accident or mistake appears in their execution: Martin v. Berens, 67 Pa. 463; Bowman v. Tagg, 19 W. N. 148; neither fraud, accident, nor mistake was proved. But, assuming that these contracts have been so reformed, the plaintiff having failed to show readiness on his part, the bill should have been dismissed: Fry, Specif. Perf., § 608; Tiernan v. Roland, 15 Pa. 438; Miller v. Henlan,

51 Pa. 265; Bispham, Eq., § 392. No decree will be made if the circumstances of the parties have changed, or if performance be impossible: Elbert v. O'Neil, 102 Pa. 305; Tiernan v. Roland, supra; 3 Lead. C. in Eq., 90; Fry, Specif. Perf., 375–389. Relief is discretionary with the court and will be granted only when the equity is with the plaintiff: Elbert v. O'Neil, supra; Backus's App., 58 Pa. 195.

3. The plaintiff has no right, title, or interest in his land, and never did have such an unincumbered estate as he contracted to convey, and such estate as he had he lost by his own default. Moreover, throughout the transaction, the plaintiff only was in default, and his loss of the Franconia farm was through no default of the defendant. Dismissal of the bill will leave the parties in statu quo, an important consideration in refusing a decree: P. & R. R. Co. v. Lehigh Nav. Co., 36 Pa. 212.

*Mr. Wm. F. Dannehower*, for the appellee.

The two agreements constituted a contract for the exchange of real estate. The conveyance of the Wunderlich farm was the full consideration of $1,800 for the Alexander farm. No objection was made to the plaintiff's deed because of a discrepancy of $54 between the deed and agreement. The mortgage on the premises was simply inaccurately described as a $2,700 mortgage.

The plaintiff was but 38 days late in the tender of his deed. The defendant lost nothing by the delay: was secure without the deed; the full consideration was paid; her possession was such notice to purchasers, incumbrancers, creditors and others that she could have successfully defended against any and all of them: Rowe v. Ream, 105 Pa. 543. Each party had possession for eight months; the full consideration was paid; the personal property upon the premises which constituted a part of the consideration, was consumed; the whole year's crops harvested.

The parties have gone too far to retreat. The plaintiff was not alone in default. The defendant never had a deed prepared, never tendered it, and quitted the premises without notice to the plaintiff.

Under such a contract and under such facts and circum-

stances, time is not of the essence of the contract: Tiernan v. Roland, 15 Pa. 438; D'Arras v. Keyser, 26 Pa. 249; Townsend v. Lewis, 35 Pa. 127; Haverstick v. Gas Co., 29 Pa. 256; Hatton v. Johnson, 83 Pa. 219.

OPINION, MR. JUSTICE STERRETT:

Neither of the contracts in question contains any reference to the other, and thus upon their face they appear to be separate and independent: but, upon the evidence before him, the learned master has rightly found they are, in effect, interdependent parts of a single contract for an exchange of the properties therein described.

According to the terms of their agreement, the parties respectively took possession of the property each was to receive, having first receipted to each other for $250 on account. Nothing more remained to be done until October 1, 1884, when appellant was to have conveyed her farm to appellee " in fee simple free from all incumbrance, dower and right of dower," and appellee was to have conveyed his farm to Edward R. Fellows, the son-in-law and appointee of appellant, subject to a mortgage of $2,700. That sum is the exact difference between the valuations of the respective properties, agreed upon by the parties as a basis of exchange, the one being valued at $1,800 and the other at $4,500. If the conveyances had been executed and delivered, as contemplated by the parties, the contract would have been fully executed, but that was not done. At the time and place appointed for exchange of conveyances, etc., appellant was present and ready to perform her part of the contract, but appellee failed to appear. The result was delay; but, inasmuch as time was not of the essence of the contract, he might have offered to perform his part of the agreement within a reasonable time thereafter, and thus put himself in a position to have demanded a deed from appellant. Subsequently, on November 15, 1884, he did tender a conveyance, but instead of being subject to a mortgage of $2,700, as required by the agreement, it was subject to an incumbrance of $2,754, and accrued interest, amounting in all to about $2,836. In the mean time, October 23, 1884, Fellows, to whom the land was to have been conveyed, brought suit to recover damages for appellee's failure to convey.

Opinion of the Court.

The deed, tendered by appellee as above stated, was refused by both Fellows and appellant. Neither of them was bound to accept it, for the obvious reason that it was subject to a greater incumbrance than either of them had agreed to assume. Without further offer to comply with his part of the contract, appellee afterwards filed his bill against appellant for specific performance of her contract. While the case was pending before the master, a scire facias on the mortgage was issued and on the judgment obtained for $3,053.27, debt, past due interest, etc., the land was sold and conveyed by the sheriff to plaintiff in the writ. To these foreclosure proceedings, neither appellant nor her son-in-law, Fellows, was made a party.

The question is whether upon the facts, of which the foregoing is an outline, the decree of the court below can be sustained. We are of opinion that it cannot, for the reason that appellee never performed or offered to perform his part of the contract, according to its true intent and meaning, and for the further reason that in the mean time and without appellant's fault, the circumstances of the parties have so changed that it is no longer in the power of appellee to convey the land as he agreed to do, and hence it would be inequitable to require appellant to convey her land and accept in return therefor such a deed as the decree contemplates.

Specific performance of contracts for sale or exchange and conveyance of land is never a matter of right, but always of grace; but whether of right or of grace, it would certainly be most unjust and inequitable to decree specific performance of a contract for exchange of lands against the party, who at the appointed time was ready and willing to perform, and in favor of the other party, who was not only in default but has never offered to perform, according to the terms of his contract, and whose laches have rendered performance on his part impossible. Such a party should be remitted to his rights at law, if he has any.

It will not do to say the parties intended the conveyance of the farm in question to Fellows should be subject to the mortgage as it then stood upon the record, $2,754 and accrued interest, or that it is not unreasonable to require the party in possession to pay the accrued and accruing interest, etc. An all-sufficient answer to such suggestions is that the parties did

not so agree.    It is the business of courts, both of law and equity, to enforce, not to make contracts.   If any provision of the agreement under consideration is clear and explicit it is that the farm was to be conveyed to Fellows on October 1st, subject to a mortgage incumbrance of $2,700, and no more. It is not alleged there was any mistake as to the amount.   As we have seen, that was the difference in the values of the respective properties agreed upon as the basis of the exchange. The mode of adjusting that difference was by conveying, on the 1st of October ensuing the date of agreement, subject to that exact sum.   Whether the excess over the sum named be much or little the court has no right to impose the payment thereof on a party who never agreed to assume it.   The principles of equity applicable to the facts of this case are elementary, and hence citations of authority are unnecessary.

Decree reversed and bill dismissed, with costs to be paid by the appellee.